FILED
2024 Sep-30  PM 12:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **QUALITY RESTAURANT CONCEPTS, L.L.C.,** | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **Defendant.** | ) | |

## COMPLAINT

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Charging Parties Misty Wells, A.P., and L.B.[1] (collectively, "Charging Parties"), as well as a class of female employees ("Class"), who were adversely affected by such practices. As alleged with greater particularity below, Defendant Quality Restaurant Concepts, L.L.C. ("Defendant") discriminated against the Charging Parties and the Class by subjecting them to a hostile work environment at its restaurant in Chelsea, Alabama, on the basis of their sex and failed to take prompt, remedial action to prevent or stop the harassment. In addition, Defendant constructively discharged Wells and A.P., and it retaliated against L.B. for complaining about

---

[1] The names of individuals known to be a minor are initialized pursuant to Rule 5.2 of the Federal Rules of Civil Procedure.

sexual harassment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed in Shelby County, Alabama, which is within the jurisdiction of the United States District Court for the Northern District of Alabama, Southern Division.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant has continuously employed at least 15 employees.

5.      At all relevant times, Defendant has continuously been a foreign corporation doing business in Shelby County, Alabama.

6.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, the Charging Parties filed charges of discrimination with the Commission alleging violations of Title VII by Defendant.

8.    On July 18, 2024, the Commission issued a Letter of Determination finding reasonable cause to believe that Title VII was violated with respect to Charging Party Wells as well as a class of employees and inviting Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.    On July 18, 2024, the Commission issued a Letter of Determination finding reasonable cause to believe that Title VII was violated with respect to L.B. and inviting Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.    On July 18, 2024, the Commission issued a Letter of Determination finding reasonable cause to believe that Title VII was violated with respect to A.P. as well as a class of employees and inviting Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11.    In its efforts to conciliate, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letters of Determination. The Commission was unable to secure conciliation agreements acceptable to the Commission.

12.    On September 4, 2024, the Commission issued a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the Commission with respect to the charge filed by Wells.

13.    On September 4, 2024, the Commission issued a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the Commission with respect to the charge filed by L.B.

14.     On September 4, 2024, the Commission issued a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the Commission with respect to the charge filed by A.P.

15.     All conditions precedent to the institution of the lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

16.     Defendant, headquartered in Birmingham, Alabama, owns and operates restaurants in multiple states including Alabama.

17.     Defendant is a franchisee of Applebee's Services, Inc.

18.     Defendant owns and operates an Applebee's restaurant in Chelsea, Alabama ("Chelsea Restaurant").

19.     On or around April 13, 2023, Defendant hired Misty Wells to work as a cook at the Chelsea Restaurant.

20.     On or around May 22, 2023, Defendant hired A.P. to work as a server and a cook at the Chelsea Restaurant.

21.     On or around June 8, 2023, Defendant hired L.B. to work as a server at the Chelsea Restaurant.

22.     During the employment of Wells, A.P., and L.B. with Defendant, Defendant employed Jeffrey Sosnowchik as the general manager of the Chelsea Restaurant.

23.     Sosnowchik was a supervisor or manager of Wells, A.P., and L.B.

24.     During the employment of Wells, A.P., and L.B. with Defendant, Defendant employed Bill Bundrum as the assistant manager of the Chelsea Restaurant.

25.     Bundrum was a supervisor or manager of Wells, A.P., and L.B.

26.     The Class consists of female employees who worked at the Chelsea Restaurant

4

within the period of May 1, 2023 through February 29, 2024 and were subjected to a hostile work environment based on their sex. The class members include M.G., M.F.,[2] and Virginia Cann.

## COUNT ONE
### (Hostile Work Environment Based on Sex)

27.     Since at least April 2023, Defendant has engaged in unlawful employment practices because of sex in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting the Charging Parties and the Class to sexual harassment and a hostile work environment based on sex.

28.     General Manager Jeffrey Sosnowchik, adult male employees, and adult male customers subjected the Charging Parties, and the Class to unwelcome verbal and physical conduct and harassment based on their sex (female). Their actions in the Chelsea Restaurant include but are not limited to the following:

      a.     Starting in or around May 2023, Sosnowchik made inappropriate, vulgar, and sexual comments to female employees. His conduct included but are not limited to the following:

            i.     Telling Wells that he was sorry he did not hear something she said because he was looking at her "titties";

            ii.     Making sexual comments to Wells while leaning in closely;

            iii.     Telling Wells to "take it all off" while showing her a wad of dollar bills after her shirt became wet and needed to be removed;

            iv.     Replying "I don't pull out" with its sexual connotations to Wells'

---

[2] *See supra* note 1.

work-related request to him to help her pull a pizza out of the microwave oven;

v.      Saying to Wells that he wanted to know her outside of work;

vi.     Offering Wells a raise after an incident in which he had sexually harassed her;

vii.    Asking out another female employee for a drink and telling her she did not have to wear anything sexy;

viii.   Flirting with A.P. (a minor) and other female employees by making comments on how they dressed and looked;

ix.     Calling M.F. (a minor) and other female employees "sluts" for being around the restaurant bar even though they were only fulfilling job duties; and

x.      Saying to employees that he wanted to hire a woman he interviewed for a position because he wanted to stare at her breasts all day.

b.      Starting in or around May 2023, Sosnowchik physically harassed female employees. His actions include but are not limited to the following:

i.      Unnecessarily swiping or brushing Wells' buttocks with his hand;

ii.     Grinding on Wells while listening to music and pushing his private parts into her buttocks;

iii.    Grabbing Wells' buttocks and holding on for at least a few seconds;

iv.     Licking blue dye in a sexual way in front of other female employees;

v.      Brushing up against A.P. and pushing his private parts against her buttocks;

6

vi.    Grinding on A.P.'s buttocks;

vii.    Following M.G. (a minor) and other female employees outside to pursue conversations with them; and

viii.    Coming up behind M.G., pressing his body against hers, and pushing his private parts on her when she was in the kitchen to get a customer order.

c.    Starting in or around August 2023, a male bartender named Bradford Kyle Huggins flirted with L.B. (a minor), repeatedly asked her out despite being told she was only 16 years old and would corner her and then physically restrain her from moving away from him.

d.    On or around August 31, 2023, Huggins pushed L.B. into an area outside the view of customers, pinned her by wrapping his leg around hers, and did not release her until another server entered the room.

e.    Starting in or around August 2023, Huggins would come up behind M.G. and press his body against hers, flirtatiously block her way and push her around, and put his head on her shoulders with his cheek against her face while looking at what she was viewing on her cell phone.

f.    Starting in or around May 2023, a male cook made comments about Cann's looks, figure, or make-up. He would say things like he had a dream about her or talk about the shape of her buttocks.

g.    Starting in or around May 2023, another male employee made sexualized jokes to Cann, talked about her, and touched her as he walked by. He moved his hand across her backside at times, using slow, intimate, and intentional swipes. A

couple of times he patted her buttocks.

h.      Starting at least by May 2023, male adult customers verbally and physically harassed female employees, some of whom were minors. The harassment incidents included but are not limited to the following:

   i.      A male customer grabbed A.P. under her breast;

   ii.     Male customers told M.F. she did not look underaged and if she were older, they would have sex with her, and other male customers told her they did not care about her age in reference to having sex with her;

   iii.    A male customer touched M.F. down her side on several different occasions;

   iv.    A male customer touched M.F. in the chest area; and

   v.     A male customer asked Cann personal questions and later grabbed her buttocks with his hand going under and upwards.

29.     Despite a history of sexual harassment at the Chelsea Restaurant and a history of sexual harassment by General Manager, Jeffrey Sosnowchik, Defendant failed to make meaningful efforts to prevent sexual harassment of Charging Parties and the Class:

   a.      Defendant failed to take reasonable actions to protect the Charging Parties and the Class and prevent sexual harassment of them when it promoted Sosnowchik to general manager over the Chelsea restaurant despite his history of sexual harassment:

      i.      In February 2021, Sosnowchik began working for Defendant. On or around April 7, 2023, Defendant promoted Jeffrey Sosnowchik to general manager of the Chelsea Restaurant. Before his promotion, Sosnowchik

8

worked as an assistant manager for Defendant at its restaurant in Pelham, Alabama.

ii.     When Sosnowchik worked as an assistant manager at the restaurant in Pelham, he sexually harassed a 16-year-old female employee. He made many inappropriate comments, told dirty jokes to servers around her, and would hug her from behind. Sosnowchik displayed similar conduct toward another female employee.

iii.    In or around July 2022, a coworker made a complaint to the Pelham restaurant's general manager about Sosnowchik's conduct toward the 16-year-old female employee. On or around July 20, 2022, Defendant issued a disciplinary action to Sosnowchik that reprimanded him for his conduct.

iv.     Respondent possessed records of Sosnowchik's prior disciplinary action and its investigation into the complaint of sexual harassment, but it did not consider those records in promoting Sosnowchik to general manager over the Chelsea Restaurant.

v.      A consideration of those records would have resulted in the denial of his promotion and transfer to the Chelsea restaurant.

b.    Defendant further failed to institute adequate safeguards to prevent sexual harassment at the Chelsea Restaurant despite a history of sexual harassment at that and other restaurants in Alabama.

i.      Respondent has regularly conducted four to six sexual harassment investigations every month with approximately half occurring at Alabama locations.

ii.     From November 2022 to December 2022, an adult male manager at the Chelsea Restaurant made sexual comments to a 16-year-old female employee working as a server. The comments included calling her "jail time" or "jailbait." On December 1 or 2, 2022, the manager locked the door to the office when he was alone with the 16-year-old server. He approached her from behind while she was counting her tips with a calculator and pressed his pelvis into her backside.

iii.     No training on sexual harassment procedures or policies has been provided to employees of the Chelsea restaurant.

iv.     Charging Parties and the Class do not recall receiving Respondent's policies or procedures on sexual harassment.

30.     Given the prevalence of the misconduct, management at the Chelsea restaurant should have known about the sexual harassment of female employees and failed to take prompt or corrective action to prevent or remedy the hostile environment it created. The sexual harassment included but is not limited to the incidents described in paragraph 28.

31.     Defendant knew of the offensive and unwelcome sexual conduct by General Manager Sosnowchik, other male employees, and male customers towards the Charging Parties and the Class and failed to take prompt or corrective action to prevent or remedy the hostile environment it created.

a.     Assistant General Manager Bundrum was aware of General Manager Sosnowchik's inappropriate behavior with female employees and failed to report it as required under Respondent's policy.

b.     M.F. informed Bundrum that Sosnowchik was calling female employees

"sluts," but Bundrum failed to take any action.

c.      A.P. informed Bundrum of Sosnowchik's harassment of her, but Bundrum brushed off the complaint.

d.      Wells complained of Sosnowchik's harassment of her to Bundrum, but Bundrum merely shook his head and did not take further action.

e.      A.P. complained about an adult male customer grabbing her under the breast to Bundrum and Sosnowchik. They did not address her complaint.

f.      M.F. complained to Bundrum and Sosnowchik of male adult customers sexually harassing her, but she was told to let it go.

g.      M.G. informed Bundrum of Huggins's harassment of her, but nothing was done.

h.      L.B. complained about Huggins's harassment of her to Sosnowchik and Bundrum. The managers failed to effectively address the complaint. Bundrum stated that L.B. was overly flirty with some employees and that could have contributed to misinterpretation from other employees.

i.      Cann reported to Bundrum when a customer inappropriately touched her buttocks. Cann pointed out the customer the next time he was in the restaurant, but Bundrum only laughed with the customer instead of addressing her complaint.

j.      Defendant received complaints from multiple employees about Sosnowchik's sexual harassment of female employees including Wells and other harassment in the workplace. However, Defendant's overly limited investigation in the matter failed to adequately address the matter. Sosnowchik's misconduct and the harassment of female employees in the Chelsea restaurant continued.

11

32.     Female employees including A.P. and M.G. were aware of Defendant's failure to take meaningful actions to stop sexual harassment after it had received complaints of harassment by Sosnowchik of Wells.

33.     The effect of the practices complained of in paragraphs twenty-seven (27) through thirty-two (32) above has been to deprive the Charging Parties and the Class of equal employment opportunities and otherwise adversely affect their status as employees because of their sex (female).

34.     The unlawful employment practices complained of in paragraphs twenty-seven (27) through thirty-two (32) above were done with malice or with reckless indifference to the federally protected rights of the Charging Parties and the Class.

**COUNT TWO**
**(Constructive Discharge Based on Sex)**

35.     The allegations contained in paragraphs twenty-seven (27) through thirty-two (32) above are hereby incorporated by reference with the same force and effect as if fully set forth herein.

36.     Wells and A.P. elected to resign their employments because their working environment had become intolerably hostile due to sexual harassment and Respondent's failure to adequately address it.

37.     The hostile environment created by Defendant was so intolerable that a reasonable person in their situation would have felt compelled to resign.

38.     Defendant's action in creating an intolerable hostile environment resulted in the constructive discharge of Wells and A.P.

## COUNT THREE
### (Retaliation)

39.     Since at least August 2023, Defendant has engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

40.     The allegations contained in paragraphs 28.c and 31.h are hereby incorporated by reference with the same force and effect as if fully set forth herein.

41.     L.B.'s mother found a way to contact Regional Manager Brock Barlow about Huggins's harassment of L.B. Defendant started an investigation in which L.B. participated. Huggins resigned during Defendant's investigation.

42.     On or about September 6, 2023, L.B. showed up to work for her scheduled shift as a server. Management told her that she could no longer work as a server because of her age (16 years old) and removed her from her remaining scheduled server shifts.

43.     Management told L.B. that she could have remained a server, but her complaint of sexual harassment had brought attention to her employment.

44.     Defendant returned L.B. to the schedule of work shifts but only as a host or car side deliverer. L.B. only worked on shifts as a host or car side deliverer afterward.

45.     L.B. submitted a notice of resignation. Her employment terminated on September 11, 2023.

46.     Defendant unlawfully retaliated against L.B. for submitting complaints about sexual harassment, participating in an investigation, and opposing conduct L.B. reasonably believed was unlawful by not allowing her to continue working as a server, which led to her termination.

47.     The unlawful employment practices complained of in paragraphs thirty-nine (39)

13

through forty-six (46) above were done with malice or with reckless indifference to the federally protected rights of L.B.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in employment practices that discriminate on the basis of sex.

B.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant to make whole Wells, L.B., A.P., and the Class, by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs twenty-seven (27) through forty-seven (47) above, in amounts to be determined at trial.

D.    Order Defendant to pay punitive damages for its malicious and reckless conduct described in paragraphs twenty-seven (27) through forty-seven (47) above, in amounts to be determined at trial.

E.    Grant such further relief as the Court deems necessary and proper in the public interest.

F.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED,

KARLA GILBRIDE
General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

MARSHA RUCKER (PA Bar No. 90041)
Regional Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 651-7045

15